**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **STERNE, AGEE & LEACH, INC., and** | ) | |
| **SIERRA EQUITY GROUP, LTD.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **CV 07-BE-909-S** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **BIRCH CAPITAL, INC., BHI GROUP,** | ) | |
| **INC., GLENWOOD MARKETING** | ) | |
| **ASSOCIATES, LTD., BMF CONSULTING,** | ) | |
| **LTD., FRANK ZANGARA, THERESE** | ) | |
| **ZANGARA, EDDY MARIN, JOSEPH** | ) | |
| **MANFREDONIA, and VAUGHN MILLER,** | ) | |
| **et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

**<u>MEMORANDUM OPINION</u>**

This matter is before the court on "Plaintiff Sterne Agee & Leach's Motion for Summary

Judgment" (doc. 213); and "Plaintiff Sierra Equity Group, Ltd.'s Motion for Summary

Judgment" (doc. 221). These motions assert: (1) that Plaintiffs are entitled to summary judgment

on the issue of whether Active Defendants were part of a fraudulent "pump and dump" scheme

involving ALVN stock trades that violated Section 10(b) of the Securities Exchange Act of 1934

and Rule 10b-5 promulgated under that Act; (2) that Plaintiffs are entitled to a declaratory

judgment that the ALVN stock trades at issue are fraudulent, illegal, unauthorized and due to be

cancelled; (3) that Plaintiffs are entitled to a permanent injunction prohibiting the settlement of

the fraudulent ALVN trades; (4) that Plaintiffs are entitled to summary judgment on Defendants'

counterclaims against them. Defendants did not file a response.   For the reasons stated in this Memorandum Opinion, the court finds that both motions are due to be GRANTED.

## I.  PROCEDURAL HISTORY

On May 14, 2007, Plaintiff Sterne Agee filed a Verified Complaint for Injunctive and Declaratory Relief (doc. 1) and Motion for Temporary Restraining Order (doc. 2) "to preserve the status quo pending investigation of criminal fraudulent activity involving shares of ART4LOVE stock (ALVN) on the securities market."  The original Defendants were the National Securities Clearing Corporation, who would settle the allegedly fraudulent trades unless enjoined from doing so;  various corporations who sought payment from Sterne Agee for shares of ALVN stock pursuant to the allegedly fraudulent trades; two clearing brokers; and the transfer agent for ALVN.

On May 15, 2007, the court granted Sterne Agee's motion and entered a Temporary Restraining Order, enjoining those Defendants from settling any of the transactions or trades in shares of ALVN stock upon trades ostensibly issued on May 10, 2007 under the name of Sterne Agee or Sierra; enjoining Defendants from demanding payment with respect to those trade orders; enjoining Defendants from effectuating any orders for transfer or registration of transfer of ALVN stock based upon those trade orders; and enjoining Defendants from disposing of records or communications generated on or after May 10, 2007 that related to ALVN stock (doc. 6).  On May 15, 2007, the court amended the TRO (doc. 8) and entered a second amended TRO (doc. 24) on May 24, 2007, which was extended on several occasions (*e.g.,* doc. 27, 30, 40 ).

On July 20, 2007, Sierra moved to intervene as an intervenor/plaintiff.  (doc. 28).

On August 1, 2007, Sterne Agee filed an amendment to its Verified Complaint, adding

parties and acknowledging Sierra's motion to intervene as a plaintiff (doc. 32). On October 23,

2007, Sterne Agee filed a Second Amendment to Verified Complaint (doc. 86) with the court's

permission, adding Defendants that they identify collectively as the "Scheme Defendants"[1]:

Vaughn Miller; the "BHI Defendants" (BHI Group, Inc.; Glenwood Marketing Associates, Inc.;

Frank Zangara; and Therese Zangara); the "BMF Defendants" (BMF Consulting, Ltd. and Joseph

Manfredonia); and the "Birch Capital Defendants" (Birch Capital, Inc. and Eddy Marin).  The

Second Amendment to the Verified Complaint asserts six counts: (1) Count One, asserted against

the "Scheme Defendants," as to the "Tranche One" shares of ALVN (all shares except those

referred to in Count Six), and claiming that these Defendants violated § 10(b) of the Securities

Exchange Act of 1934 and Rule 10b-5; (2) Count Two, requesting injunctive relief against all

Defendants as to the "Tranche One" shares of ALVN; (3) Count Three, requesting a declaratory

judgment as to the "Tranche One" shares of ALVN; (4) Count Four, requesting that a judgment

be entered against the "Scheme Defendants" and in favor of Plaintiffs in the amount of legal fees

and costs; and further, seeking indemnity and contribution from the "Scheme Defendants" with

respects to any amounts they may lose, whether because funds were held back or set off by

NSCC or because of ALVN trades that settled; (5) Count Five, asserting an alternative claim for

unjust enrichment as to the "Tranche One" shares of ALVN and against all Defendants who may

be determined to have been unjustly enriched; and (6) Count Six, an action in the nature of

interpleader by which Sterne Agee paid into the court funds relating to  trades that Sterne Agee

could not, at the time of the filing, prove were directly linked to ALVN shares sold by the Active

---

[1] In this Opinion, the court refers to these Defendants as "Active Defendants" to distinguish them from the Nominal/Relief Defendants and the Defendants that the court has dismissed.

Defendants, and requested court resolution of the proper disposition of those funds.  (doc. 86).

     Sierra  filed an Amended Complaint adding the same Defendants that Sterne Agee had added in its amendments to the complaint. (doc. 92).  Sierra's Amended Complaint asserts five counts similar to the first five counts in Sterne Agee's Second Amendment to Verified Complaint (*see* doc. 86), but included no action in the nature of interpleader and deposited no funds with the court.  (doc. 92).

     On November 21, 2007, Plaintiffs filed "Stipulation Regarding Entry of Preliminary Injunction" (doc. 118), stating that the "Nominal Defendants" – Barron Moore, Inc.; Franklin Ross, Inc.; Legent Clearing LLC; and Routh Stock Transfer, Inc. – had stipulated to the entry of the described preliminary injunction.  Further, Plaintiffs requested the court to enter a preliminary injunction to enjoin these "Nominal Defendants" from acting with respect to the trades of shares of ALVN stock made the basis of this suit, and thereby, to prevent the Active Defendants from obtaining the proceeds from their allegedly fraudulent market manipulation scheme.

     On November 21, 2007, Plaintiff Sterne Agee filed a motion (doc. 120) requesting release of interpleaded funds referenced in Count Six, so that they could be used in connection with settlement of "Non-Scheme Trades."  The court granted this motion on November 26, 2007, and amended that order on November 29, 2007. (doc. 129).

     On November 26, 2007, the court entered an Order of Dismissal, dismissing certain "Nominal Defendants," including National Securities Clearing Corporation (doc. 124).  The next day, the court entered a Preliminary Injunction Order (doc. 127), enjoining certain "Nominal Defendants" that had previously stipulated to the entry of the injunction.

The BHI Defendants (doc. 110 as amended doc. 125; 132), BMF Defendants (docs. 134 & 138) and the Birch Capital Defendants (doc. 107 as amended doc. 130) all filed motions to dismiss. The Birch Capital Defendants also filed an alternative motion for transfer of venue.   On September 30, 2008, the court denied the Birch Capital Defendants' motion to dismiss and alternative motion for transfer of venue. (doc. 159).   As to the motions to dismiss of the BHI and BMF Defendants, the court granted the motions *only* to the extent that the Amended Complaints alleged misrepresentations and omissions under Rule 10b-5(b) that were not adequately pled, but denied the motions in all other respects. (doc. 159).

The BMF Defendants and Birch Capital Defendants filed Answers to the Amended Complaints. (doc. 162, 163, 167).   The Birch Capital Defendants also filed a Counter-Claim for Declaratory Judgment requesting the court to declare that the Birch Capital Defendants are entitled to the profits and principal of the ALVN transactions involving these Defendants. (doc. 167).   On February 3, 2009, the BHI Defendants filed Answers and Counter-Claims, requesting a similar Declaratory Judgment in favor of the BHI Defendants. (docs. 183 & 184).   On April 10, 2009, the BMF Defendants also filed a Counter-Claim against Plaintiffs. (doc. 192).    Sterne Agee and Sierra filed answers to these Counter-Claims. (docs. 185, 186, 193, & 194).

On August 14, 2009, Plaintiffs filed a joint motion (doc. 206) to stay proceedings as to the Nominal/Relief Defendants: Routh Stock Transfer, Inc; Barron Moore, Inc.; Franklin Ross, Inc.; and Legent Clearing, LLC.   The court granted that motion (doc. 209).

Also on August 14, 2009, Plaintiffs filed a joint motion to dismiss Defendant Vaughn Miller, who had previously been identified as a "Scheme Defendant."   (doc. 207).   The court granted that motion. (doc. 208).

On November 15, 2009, Sterne Agee filed a motion for summary judgment (doc. 213), and on December 2, 2009, Sierra filed its motion for summary judgment (doc. 221). Although the court entered briefing schedule Orders (docs. 220 & 222) consistent with its Scheduling Order (doc. 182 ) giving the Defendants 26 and 27 days[2], respectively, to respond to each motion, the BHI Defendants, the BMF Defendants, and the Birch Capital Defendants did not respond to either motion. The deadlines for responding have expired, and the motions have been under submission since December 1, 2009 and December 29, 2009, respectively. The court entered the scheduling order in this case on January 14, 2009 (doc. 182) and the order setting case for pretrial on February 26, 2010 was entered on February 3, 2010 (doc. 223).

On February 17, 2010, Frank Zangara sent a letter to this court, which this court filed as motion for extension of time to respond to the motions for summary judgment. (doc. 224). On February 19, 2010, the court entered an Order converting the pretrial conference into a hearing on this motion and requiring Mr. Zangara to appear at the hearing in person. (doc. 226). Mr. Zangara did not appear at the hearing, and the court subsequently denied the motion for extension of time, finding that the motion was not presented in good faith and that Mr. Zangara had not exercised due diligence. (doc. 228).

## II.  FACTS

Sterne Agee's brief in support of summary judgment, which Sierra adopted,  included the following undisputed facts.  Defendants did not object to or otherwise dispute any of these facts, and therefore, the court accepts them as true for the purposes of these motions.

---

[2]Because of the intervening holidays, the court gave Defendants more than the 21 day period stated in the Scheduling Order.

A.      **Remaining Active Parties**[3]

1.      Plaintiffs

Plaintiff Sterne Agee is a brokerage firm organized as a Delaware corporation with its principal place of business in Birmingham, Alabama, and on May 10, 2007, served as a clearing broker for Plaintiff Sierra.  Sierra is an introducing broker that clears transactions, pursuant to an agreement, through Sterne Agee.  As part of the clearing agreement, representatives of Sierra could enter trades through a computer system operated by Automated Financial Systems ("AFS") that are then routed to and executed by Sterne Agee's trading desk.  One of the Sierra accounts in which Sierra's representatives could make such trades belongs to the Louise F. Rehling Trust (the "Account").

2.      BHI Defendants

Defendants Frank Zangara and Therese Zangara own and control Defendants BHI Group, Inc. and Glenwood Marketing Associates.  According to BHI's registration with the New York Department of State, Division of Corporations, Therese Zangara is the registered agent for Defendant BHI. According to account-opening documents for BHI's brokerage account at Barron Moore, Inc., Defendant Frank Zangara is listed as the President of BHI, and Defendant Therese Zangara is listed as the Secretary.  Furthermore, according to the account-opening documents for Glenwood's brokerage account at Barron Moore, Therese Zangara is the secretary, treasurer and president of Glenwood.

---

[3] The Nominal/Relief Defendants are: Routh Stock Transfer, Inc.; Barron Moore, Inc.; Franklin Ross, Inc.; and Legent Clearing, LLC.  Plaintiff primarily brought these Defendants into this action as necessary parties to effect injunctive relief and to prevent the securities transactions at issue from settling.  The Plaintiffs do not accuse the Nominal/Relief Defendants of any wrongdoing and have not asserted any substantive claims against them.

      3.      Birch Capital, Inc. Defendants

Defendant Eddy Marin controls Defendants Birch Capital, Inc. and Green Streak Group, Inc.  According to account-opening documents for the brokerage account of Birch Capital at Franklin Ross, Inc., Defendant Marin lists himself as president and secretary of Birch Capital. Likewise, in account-opening documents for Green Streak at Barron Moore, Defendant Marin lists himself as president of Green Streak.

      4.      BMF Defendants

Defendant Joseph Manfredonia is listed as secretary of Defendant BMF Consulting Ltd. on the documents of the brokerage account that BMF opened at Franklin Ross, and exercised control of that account.

**B.  The May 10, 2007 Account Invasions**

On May 10, 2007, approximately 50 separate unauthorized buy orders (a total of 2.45 million shares of ALVN) were entered for the Account through the AFS system using identification number RA01, which was assigned to Sierra, and which created orders reflected on the books of Sterne Agee.  The AFS system was accessed with an identification number and password that had been assigned to Eric Bloom, the principal of Sierra.  All the ALVN orders for the Account were executed except an order for 250,000 shares of ALVN, which was received late in the day.

When Sterne Agee received the large order for 250,000 shares of ALVN, a Sterne Agee trader called Sierra and learned that Sierra knew nothing about the order.  Eric Bloom, whose identifying information had been used for the trades, also informed Sterne Agee that Sierra had not initiated the trades.  After receiving this information, Sterne Agee did not execute any further

buy orders for ALVN on May 10, 2007.  Eric Bloom did not execute or authorize the ALVN buy

orders for the Account.  Louise Rehling, trustee of the Account, did not initiate or authorize the

purchase of ALVN stock for the Account.  The buy orders for ALVN stock  for the Account were

unauthorized, and a hacker or other unauthorized person fraudulently used Mr. Bloom's

identification number and password to place the orders.

The Account was not the only securities account invaded on May 10, 2007.   Similar false

buy orders for ALVN that used the same identity theft scheme were placed through West Park

Capital, Inc., and CyberTrader.

The May 10, 2007 trades of ALVN that are the subject of this suit artificially inflated the

price of ALVN.  In the two weeks before May 10, 2007, ALVN traded between $.12 and $.16 per

share, and the average volume was 1,490 shares per day.  On May 9, 2007, the high price for

ALVN was $.17 and 21,000 shares traded that day. The price for ALVN more than doubled on

May 10, 2007 to a high of $.40 per share.  The ALVN buy orders at issue were part of a scheme

to improperly manipulate the market and were the result of identity thefts utilizing brokers'

computer identification numbers and passwords without the knowledge or consent of those

brokers.

**C.     The Defendants' Transfers of ALVN prior to  May 10, 2007.**

On September 1, 2006, Glenwood transferred 500,000 shares of ALVN to the account of

Green Streak.  On September 27, 2006, Green Streak transferred 500,000 shares of ALVN back

to Glenwood. On September 29, 2006, Green Streak transferred another 318,560 shares of

ALVN to Glenwood. On April 4, 2007, BHI transferred 250,000 shares of ALVN to the account

of BMF.   On April 4, 2007, Glenwood transferred 3,000,000 shares of ALVN to BMF's account

pursuant to instructions from Therese Zangara.  On April 19, 2007, BMF transferred 2 million

shares of ALVN to Birch Capital and entered into a "consulting agreement" for unspecified

services with Birch Capital pursuant to instructions from Manfredonia.

    **D.    Defendants' Sales of ALVN on May 10, 2007.**

On Thursday, May 10, 2007, as part of the fraudulent market manipulation scheme, Birch

Capital sold 997,500 of the two million shares of ALVN that BMF had transferred to it for the

average price of $.3008, for a one-day, gross scheme profit of $286,549.81. Nearly all of these

shares were sold through the following chain of securities firms: (a) Franklin Ross (cleared

through Legent) to UBS; (b) UBS to Sterne Agee (matched through the NSCC system); and (c)

Sterne Agee, which executed the fraudulent buy orders that were made through the invaded

account at Sierra, to Sierra.

On the same day, as part of the fraudulent market manipulation scheme, BHI sold

100,000 shares of ALVN for the average price of $.31 from its Franklin Ross account, and sold

300,000 shares of ALVN for the average price of $.395 per share from its Barron Moore account

through former Defendant Finance 500, for a one-day, gross scheme profit of approximately

$149,500. The ALVN shares sold through BHI's Barron Moore account were sold through the

following chain of securities firms: (a) Barron Moore through Finance 500 (which cleared

through Legent and Penson), (b) Finance 500 to Sterne Agee (matched through the NSCC

system); and (c) Sterne Agee, which executed the fraudulent buy orders that were made through

the invaded account at Sierra, to Sierra. The ALVN shares sold through BHI's Franklin Ross

account were sold through the following chain of securities firms: (a) Franklin Ross (cleared

through Legent) to UBS; (b) UBS to Sterne Agee (matched through the NSCC system); and (c)

Sterne Agee, which executed the fraudulent buy orders that were made through the invaded account at Sierra, to Sierra.

Further, as part of the fraudulent market manipulation scheme on that same day, BMF sold 735,000 shares of ALVN for the average price of $.3083, for a one-day gross scheme profit of approximately $219,655.37.  Nearly all of these shares were sold through the following chain of securities firms: (a) Franklin Ross (cleared through Legent) to UBS; and (b) UBS to Sterne Agee (matched through the NSCC system); and (c) Sterne Agee, which executed the fraudulent buy orders that were made through the invaded account at Sierra, to Sierra.

### E.    Defendants' Admissions.

On July 13, 2009, Plaintiff Sterne Agee propounded to the BMF Defendants, the Birch Capital Defendants, and the BHI Defendants certain Requests for Admission pursuant to Fed. R. Civ. Pro. 36.  None of these Defendants ever responded to those Requests for Admission, or any other discovery request.  The Requests for Admissions issued by Sterne Agee were properly served, and more than thirty days elapsed since their service.  Because the BHI Defendants, the Birch Capital Defendants, and the BMF Defendants failed to object to or respond to Sterne Agee's Requests for Admission, the matters covered by those requests are deemed admitted as a matter of law.

Federal Rule of Civil Procedure 36 provides in pertinent part that: "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. Pro. 36(a)(3) (emphasis added).  The Eleventh Circuit has consistently

interpreted Rule 36 to require that those matters be admitted.  *See, e.g., U.S. v. 2204 Barbara Lane*, 960 F.2d 126, 129 (11th Cir. 1992) (affirming the use of unanswered requests for admission as a basis for summary judgment, noting that the facts, having been admitted, were "not in dispute"); *Johnson v. Health Central Hosp.*, 208 Fed. Appx. 797, 800-801 (11th Cir. 2006) (affirming summary judgment based on plaintiff's admissions resulting from his failure to respond to requests for admission).

Consequently, by failing to respond to the requests for admissions the BMF Defendants, the Birch Capital Defendants, and the BHI Defendants have all admitted to their involvement in a classic "pump and dump" scheme that illegally and artificially drove up the price of ALVN stock.  An appendix attached to this opinion sets out the specific admissions.

### III.  LEGAL STANDARD

Summary judgment is an integral part of the Federal Rules of Civil Procedure.  Summary judgment allows a trial court to decide cases when no genuine issues of material fact are present and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  When a district court reviews a motion for summary judgment, it must determine two things: (1) whether any genuine issues of material fact exist; and if not, (2) whether the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56) (emphasis added).  The moving party can meet this

burden by offering evidence showing no dispute of material fact or by showing that the non-

moving party's evidence fails to prove an essential element of its case on which it bears the

ultimate burden of proof.  *Celotex*, 477 U.S. at 322-23.  Rule 56, however, does not require "that

the moving party support its motion with affidavits or other similar materials *negating* the

opponent's claim."  *Id.*

Once the moving party meets its burden of showing the district court that no genuine

issues of material fact exist, the burden then shifts to the non-moving party "to demonstrate that

there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats &*

*Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Disagreement between the parties is not

significant unless the disagreement presents a "genuine issue of material fact."  The non-moving

party must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers

to interrogatories, and admissions on file,' designate 'specific facts showing that there is a

*genuine issue for trial*.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (emphasis

added); *see also* Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e), 28

U.S.C. app. ("The very mission of summary judgment procedure is to pierce the pleadings and to

assess the proof . . . to see whether there is a genuine need for trial.").

 After both parties have had an opportunity to address the motion for summary judgment,

the court must grant the motion *if* no genuine issues of material fact exist *and if* the moving party

is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.

In this case, the Defendants failed to respond to the Motions for Summary Judgment and

thereby failed to raise any genuine issues of material fact.  Therefore, the court will accept as

undisputed the facts presented by the Plaintiffs, many of which come from the Requests for

Admissions to which the Defendants also failed to respond, and will then determine whether Plaintiffs are entitled to judgment as a matter of law.

## IV.  DISCUSSION

Although Plaintiffs filed separate Verified Complaints and Amended Complaints, Counts One through Five of Plaintiff Sierra's Amended Complaint are virtually identical to the same numbered counts in Plaintiff Sterne Agee's Second Amendment to Verified Complaint. Therefore, for the purposes of this discussion, the court need not distinguish between them.

### A.      Count One - Violation of the Securities Exchange Act of 1934 and Rule 10b-5

Plaintiffs are entitled to summary judgment on their market manipulation scheme allegations because the undisputed facts reflect that the remaining Active Defendants engaged in a classic "pump and dump scheme" to Plaintiffs' detriment in violation of the Securities Exchange Act of 1934 and Rule 10b-5.  Such a manipulation scheme "strikes at the heart of the pricing process on which all investors rely.  It attacks the very foundation and integrity of the free market system.  Thus, it runs counter to the basic objectives of the securities laws."  *In the Matter of PAGEL, Inc.* (8-16764), Release No. 34-22280, 33 S.E.C. Docket 1003, 1985 WL 548387, at *7 (S.E.C. Release No. 22820, Aug. 1, 1985).

Activity that gives a false impression of market activity is illegal manipulation of the markets.  *See, e.g., Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 199 (1976) ("Use of the word 'manipulative' is especially significant.  It is and was virtually a term of art when used in connection with securities markets.  It connotes intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities."); *Hundahl v. United Benefit Life Ins. Co.*, 465 F. Supp. 1349, 1360 (N.D. Tex. 1979) ("practices in

14

the marketplace which have the effect of either creating the false impression that certain market activity is occurring when in fact such activity is unrelated to actual supply and demand or tampering with the price itself are manipulative."); *In the Matter of PAGEL, Inc.* 1985 WL 548387, at *3 ("In essence, a manipulation is intentional interference with the free forces of supply and demand . . . ."). To establish a market manipulation scheme, "the plaintiff must . . . show 'intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities.'" *Hochfelder,* 425 U.S. at 199. To prove such conduct, a plaintiff may show "that the defendant either injected inaccurate information into the market or created a 'false impression of market activity.'" *GFL Advantage Fund, Ltd. v. Colkitt,* 272 F.3d 189, 205 (3rd Cir. 2001). In addition, "to maintain a private right of action for market manipulation, a plaintiff must ... prove the basic elements of scienter, reliance, and causation of damages, typically reflected in stock price movements." *In re Safeguard Scientifics,* No. Civ.A.01-3208, 2004 WL 2700291, at * 2 (E.D. Pa. Nov. 18, 2004) (citing *GFL Advantage Fund,* 272 F.3d at 206, n. 6; *In re Bell Atl. Corp. Sec. Litig.,* 1997 WL 205709 (E.D. Pa. 1997)). Here, the undisputed facts establish each of these elements.

Plaintiffs have established the first element of market manipulation, "controlling or artificially affecting the price of securities." A plaintiff can prove market manipulation by showing: (1) a drastic increase in trading volume (*U.S. v. Gilbert*, 668 F.2d 94, 95 (2d Cir. 1981)); *or* (2) a drastic increase in price (*R.J. Koeppe & Co. v. S.E.C.*, 95 F.2d 550, 552 (7th Cir. 1938).) Here, the Active Defendants engaged in a scheme to both increase the volume of trading in ALVN and to increase the price of ALVN. Prior to May 10, 2007, the average daily trading volume in ALVN was 3,270 shares. On May 10, 2007, trading in ALVN spiked to millions of

shares being traded.  In addition, the Active Defendants' scheme effectively doubled the trading

price of ALVN stock in one day.  Further, the Active Defendants perpetrated the scheme by

injecting false buy orders for ALVN into the market, which in turn created a false impression of

true market activity.

The manner in which the Active Defendants conducted their scheme demonstrates a

fraudulent market manipulation scheme. "Proof of a manipulation almost always depends on

inferences drawn from a mass of factual detail.  Findings must be gleaned from patterns of

behavior, from apparent irregularities, and from trading data.  When all of these are considered

together, they can emerge as ingredients in a manipulative scheme designed to tamper with free

market forces." *See PAGEL,* 1985 WL 548387 at *3.  Here, Plaintiffs provided facts showing

how the scheme worked and evidence of the Active Defendants' benefits from the scheme.  The

Defendants' *admissions* that they engaged in a fraudulent pump and dump scheme further support

the finding of a fraudulent market manipulation scheme.

The Active Defendants have all admitted the facts that prove how the scheme was

conducted.  These admissions comport with the other evidence in this case that Sterne Agee

submitted.  The Active Defendants transferred millions of ALVN shares among themselves in an

effort to effectuate the market manipulation scheme.  Moreover, the undisputed facts that

establish that (1) an account at West Park was invaded as part of the scheme and fraudulent buy

orders for a total of 109,400 shares of ALVN were issued; and (2) the Account at Sierra was

invaded as part of the scheme and fraudulent buy orders totaling approximately 2.2 millions

shares of ALVN were entered through the AFS system.

In addition, these accounts were invaded in furtherance of the market manipulation

scheme to fraudulently increase the price of ALVN stock so that the Active Defendants could "dump" their ALVN shares at artificially inflated prices.  Moreover, the Active Defendants sold their ALVN shares at huge profits as a result of their scheme.  For example, had the injunctive relief not been granted, the BHI Defendants would have reaped ill-gotten gains of over $149,500 from their participation in the illegal pump and dump scheme.  The BMF Defendants would have reaped ill-gotten gains of approximately $227,850, and the Birch Capital Defendants would have received approximately $300,125.01 in ill-gotten gains.

Plaintiffs have also established the other requisite elements of a market manipulation scheme under the 1934 Act and Rule 10b-5.  "To establish liability under § 10(b) and Rule 10b-5, a private plaintiff must prove that the defendant acted with scienter, "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (citations omitted).  The Active Defendants here have admitted that their intent was fraudulent and that they intentionally engaged in a scheme to inflate the price of ALVN. Further, the mechanics of the scheme itself, with its invasions of accounts and issuance of fraudulent buy orders for ALVN, establish the required intent.  Reliance *is presumed* in a market manipulation scheme case. *Basic Inc. v. Levinson*, 485 U.S. 224, 245 (1988).  The Active Defendants cannot rebut this presumption of reliance because, as shown below, they have admitted that they intentionally engaged in a "pump and dump" scheme.  Also, the actions of Sterne Agee and other market participants that were triggered by the fraudulent buy orders, which were intentionally made to appear to be legitimate, show reliance on the manipulative scheme. Moreover, concerted action to manipulate a stock price, which has been proven here, is sufficient to establish loss causation.  *See In re Adler, Coleman Clearing Corp.*, 469 F. Supp. 2d

112, 126 (S.D.N.Y. 2007) ("Market manipulation by means of concerted short selling calculated to artificially bring down the price of stocks constitutes harmful conduct sufficient to establish loss causation.") (citing *Compudyne Corp. v. Shane,* 453 F. Supp. 2d 807, 827 (S.D.N.Y. 2006).)

In sum, the court finds that no genuine issue of material fact exists, and Plaintiffs are entitled to summary judgment as to their claim in Count One.

**B.  Count Two - Declaratory Judgment**

In light of the findings above, the court will enter a declaratory judgment that the "Tranche One" ALVN Transactions at issue in this case are fraudulent, illegal, unauthorized, and due to be cancelled.

**C.  Count Three - Permanent Injunction**

The court had previously entered a preliminary injunction preventing the settlement of the "Tranche One" ALVN Transactions at issue in this case.  Now that the case has been resolved in Plaintiffs' favor, the Plaintiffs request that the preliminary injunctive relief be made permanent. In ruling on that request, the court must consider the traditional equitable criteria for injunctive relief; it must determine whether Plaintiffs have shown that (1) they have established success on the merits; (2) they will suffer irreparable injury unless the injunction issues; (3) the threatened injury to Plaintiffs outweighs whatever damage the proposed injunction may cause Defendants; and (4) the injunction, if issued, would not be adverse to the public interest.  *See U.S. v. Endotec, Inc.*, 563 F.3d 1187, 1194 (11th Cir. 2009) (listing these traditional equitable criteria). Obviously, Plaintiffs have now established success on the merits, and the court acknowledges and confirms its previous rulings that the Plaintiffs have met the other criteria.  (*See, e.g.,* docs. 6 & 127).  Therefore, the court finds that good cause exists to enter an injunction that permanently

prohibits the settlement of the "Tranche One" ALVN Transactions at issue in this case.  By a separate Order entered simultaneously with this Memorandum Opinion, the court will enter a permanent injunction to this effect.

### F.  Counterclaims

The Birch Capital Defendants filed a counterclaim (doc. 167), requesting that this court enter a declaratory judgment stating that those Defendants/Counter-Plaintiffs are entitled to have funds from the ALVN trades in question – currently "frozen" in an account administered and maintained by Nominal Defendant Franklin Ross –  released to them.  The BHI Defendants (docs. 183 - Sterne Agee & 184 - Sierra) and BMI Defendants (doc. 192)  filed similar counterclaims, requesting that this court enter a declaratory judgment that those Defendants/Counter-Plaintiffs are entitled to have funds from the ALVN trades in question – currently "frozen" in an account administered and maintained by Nominal Defendant Legent Clearing LLC – released to them.

In light of the findings above, the court finds that no genuine issue exists as to any material fact relating to the requests in these counterclaims, and that, as a matter of law, these Defendants/Counter-Plaintiffs are *not* entitled to the entry of a declaratory judgment in their favor; rather, the Plaintiffs/Counter-Defendants are entitled to judgment in their favor on the counterclaims as a matter of law.

### G.  Counts Four - Six

As Plaintiff Sterne Agee had requested, the court previously ordered the release of interpleaded funds, the "Tranche Two" ALVN Transactions referenced in Count Six (of Sterne

Agee's Complaint as amended - Sierra's Amended Complaint included no Count Six); thus, the court finds that no viable claims remain in Count Six.  Therefore, the only potentially viable and unresolved claims are those in Counts Four and Five.  The court notes that Plaintiffs' motion for summary judgment does not address Count Four - requesting attorneys' fees, costs, indemnity and contribution against Active Defendants; and Count Five - an alternative claim requesting unjust enrichment.  Because the "Tranche One" ALVN Transactions were not allowed to settle, the only claims that now logically remain are those in Count Four requesting attorneys' fees and costs.  The court will allow Plaintiffs to file post-judgment petitions for such fees and costs in accordance with Rule 54 of the Federal Rules of Civil Procedure.

## IV.  CONCLUSION

For the reasons set forth above, the court finds:

- that the Birch Defendants, the BMI Defendants and the BHI Defendants violated the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, and thus, that each Plaintiff is entitled to summary judgment as to Count One;

- that, as requested in Count Two, Plaintiffs are entitled to a declaratory judgment stating that the "Tranche One" ALVN trades at issue in this case are fraudulent, illegal, unauthorized, and due to be cancelled.

- that, as requested in Count Three,  Plaintiffs are entitled to a permanent injunction prohibiting the settlement of the fraudulent "Tranche One" ALVN Transactions, the injunction to be entered by a separate Order, contemporaneously with this opinion.

- that on the counterclaims asserted by the Counter- Plaintiffs/Active Defendants (Birch Defendants, the BMI Defendants and the BHI Defendants),  Counter-

Defendants/Plaintiffs (Sterne Agee and Sierra) are entitled to a judgment as a matter of law in their favor and against the Counter- Plaintiffs. (docs. 167, 183, 184, and 192).

- that the only potentially viable and unresolved claims in Counts Four - Six are the claims in Count Four requesting attorneys' fees and costs, and Plaintiffs may file post-judgment petitions for such fees and costs.

Contemporaneously with the filing of this Memorandum Opinion, the court will enter a separate Order consistent with its findings.

Dated this 22nd day of April, 2010.

_Karon O. Bowdre_
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE

21

## Appendix: Admissions of Active Defendants

### 1.  Admissions of the BMF Defendants

The BMF Defendants have admitted to their involvement in a classic "pump and dump" scheme, through which they illegally and artificially drove up the price of ALVN.

Specifically, the BMF Defendants have also admitted:

- that they were involved in and participated in a "pump and dump" scheme to inflate artificially the price of ALVN stock that was consummated on May 10, 2007.
- that part of that scheme was to issue fraudulent buy orders for ALVN from invaded computers and/or customer accounts.
- that, as part of that scheme, on May 10, 2007, BMF sold 735,000 shares of ALVN from its account at Franklin Ross for an average price of $.31 per share, totaling a one-day, gross scheme profit of approximately $227,850.
- that, as part of that scheme, customer accounts – including but not limited to the Account – at Sierra Equities and West Park Capital were invaded on May 10, 2007 so that fraudulent purchase orders designed to artificially inflate the price of ALVN could be issued.
- that, as part of that scheme,  the fraudulent purchase orders were entered on May 10, 2007 for ALVN from the invaded accounts at Sierra Equities and West Park Capital, including the Account, and were for over 2.3 million shares of ALVN.
- that they conspired with one or more of the co-Defendants or others to create fraudulent buy or sell orders and to increase the price of ALVN on May 10, 2007.
- that they employed a scheme, device, or artifice to defraud Plaintiffs relating to BMF's sale of shares of ALVN on May 10, 2007.
- that they engaged in acts, practices, or courses of business that operated or would operate as a fraud or deceit upon persons in relation to BMF's sale of shares of ALVN on May 10, 2007.
- that they disseminated or caused to be disseminated to the public and the marketplace false information in the form of fraudulent buy orders that indicated the price of ALVN was rising.
- that the transfer of 2,000,000 shares of ALVN from BMF to Birch Capital on April 19, 2007, which was ostensibly in exchange for "consulting work" provided to BMF by Birch Capital, was actually part of the "pump and dump" scheme consummated on May 10, 2007, the subject of this litigation.

### 2.    Admissions of the Birch Capital Defendants.

Similarly, the Birch Capital Defendants have admitted to their involvement in a classic

"pump and dump" scheme consummated on May 10, 2007 where they illegally and artificially

drove up the price of ALVN shares.  Specifically, as part of this scheme, the Birch Capital

Defendants have admitted:

- that, as part of that scheme, fraudulent buy orders were issued for ALVN from invaded computers and/or customer accounts.
- that, as part of that scheme, on May 10, 2007, Birch Capital sold 997,500 shares of ALVN from its account at Franklin Ross for an average price of $.31 per share, totaling a one-day, gross scheme profit of approximately $300,125.01.
- that, as part of that scheme, customer accounts – including but not limited to the Account – at Sierra Equities and West Park Capital were invaded on May 10, 2007 so that fraudulent purchase orders designed to artificially inflate the price of ALVN could be issued.
- that, as part of that scheme, the fraudulent purchase orders were entered on May 10, 2007 for ALVN from the invaded accounts at Sierra Equities and West Park Capital, including the Account, and were for over 2.3 million shares of ALVN.
- that they conspired with one or more of the co-Defendants or others to create fraudulent buy or sell orders and to increase the price of ALVN on May 10, 2007.
- that they employed a scheme, device, or artifice to defraud Plaintiffs relating to Birch Capital's sale of shares of ALVN on May 10, 2007.
- that they engaged in acts, practices, or courses of business that operated or would operate as a fraud or deceit upon persons in relation to Birch Capital's sale of shares of ALVN on May 10, 2007.
- that they disseminated or caused to be disseminated to the public and the marketplace false information in the form of fraudulent buy orders that indicated the price of ALVN was rising.
- that the transfer of 2,000,000 shares of ALVN from BMF to Birch Capital on April 19, 2007, which was ostensibly in exchange for "consulting work" provided to BMF by Birch Capital, was actually part of the "pump and dump" scheme consummated on May 10, 2007, the subject of this litigation.

**3.      The Admissions of the BHI Defendants.**

The BHI Defendants have admitted:

- to their involvement in a classic "pump and dump" scheme that was consummated on May 10, 2007, where they illegally and artificially inflated the price of ALVN.
- that part of that scheme was to issue fraudulent buy orders for ALVN from invaded computers and/or customer accounts.
- that, as part of that scheme, BHI sold 100,000 shares of ALVN from its account at Franklin Ross for an average price of $.31 per share and 300,000 shares of ALVN from its account at Barron Moore  for an average price of $.395 per share, totaling a one-day,

gross scheme profit of approximately $149,500.

- that, as part of that scheme, customer accounts – including but not limited to the Account – at Sierra Equities and West Park Capital were invaded on May 10, 2007 so that fraudulent purchase orders designed to artificially inflate the price of ALVN could be issued. .
- that the fraudulent purchase orders entered on May 10, 2007 for ALVN from the invaded accounts at Sierra Equities and West Park Capital, including the Account, were for over 2.3 million shares of ALVN and were a part of that scheme.
- that they conspired with one or more of the co-Defendants or others to create fraudulent buy or sell orders in order to increase the price of ALVN on May 10, 2007.
- that they employed a scheme, device, or artifice to defraud Plaintiffs relating to BHI's sale of shares of ALVN on May 10, 2007.
- that they engaged in acts, practices, or courses of business that operated or would operate as a fraud or deceit upon persons in relation to BHI's sale of shares of ALVN on May 10, 2007.
- that they disseminated or caused to be disseminated to the public and the marketplace false information in the form of fraudulent buy orders that indicated the price of ALVN was rising.
- that, as part of that scheme, the following transfers of shares of ALVN between Glenwood and Green Streak occurred:
  * A transfer of 500,000 shares of ALVN from Glenwood to Green Streak on September 1, 2006;
  * A transfer of 500,000 shares of ALVN from Green Streak to Glenwood on September 27, 2006; and
  * A transfer of 318,560 shares of ALVN from Green Streak to Glenwood on September 29, 2006.
- that, as part of that scheme, the transfer of 3,000,000 shares of ALVN from Glenwood to BMF occurred on April 4, 2007.
- that, as part of that scheme, BHI's transfer of 1,950,000 shares of ALVN from its Barron Moore account to its Franklin Ross account occurred on March 13, 2007.
- that, as part of that scheme,  BHI's transfer of 250,000 shares of ALVN to BMF occurred on April 4, 2007.